UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VERONICA L.,

                              Plaintiff,

              -against-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY  FILED            │
│ DOC #:_____            │
│ DATE FILED:___3/6/2025____       │
└─────────────────────────────────┘
```

**OPINION ON MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

24-CV-1079 (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Veronica L. ("Plaintiff"), represented by counsel, commenced this action against

Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant

to Section 205(g) and/or Section 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. §§

405(g) and/or 1383(c)(3).  Plaintiff seeks review of the Commissioner's decision that Plaintiff

was not disabled under sections 216(i), 223(d), and 202(e) of the Act from March 1, 2020, the

onset date of her alleged disability, through the date of the decision, November 24, 2023.

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is

DENIED.

**BACKGROUND**

Plaintiff, who was born on February 13, 1971, is widowed and lives with an adult

daughter.  Plaintiff has a GED and is employed part-time as a front-desk security worker at a

school.  Prior to her current job, Plaintiff was employed as a kitchen/cafeteria worker at the

school from May 2018 to March 15, 2020.  Plaintiff stopped working on March 15, 2020 after

the school closed due to COVID.  She received nominal pay thereafter in 2020, but not enough

to constitute substantial gainful activity ("SGA") within the meaning of the Act.  She resumed

working for the same school in the third quarter of 2021 on a part-time basis—again, resulting in insufficient earnings to qualify as SGA.  However, starting in the first quarter of 2023, Plaintiff started working more hours at the school resulting in her having substantial gainful employment in 2023.

Plaintiff claims she has suffered from depression and anxiety since she was 19 years old following the death of her mother, and that her symptoms worsened after her husband was diagnosed with terminal lung cancer in 2013.  On March 14, 2021, Plaintiff's husband passed away from lung cancer.

Plaintiff alleges disability beginning on March 1, 2020 due to diabetes, high blood pressure, anxiety, depression, and body pain.[1]  (Administrative Record, ECF No. 9, A.R. 301)

Because she had substantial gainful employment starting in 2023, the period for which disability benefits were considered by the ALJ is March 1, 2020 through December 31, 2022.

### 1. *Procedural History*

Plaintiff filed an application for a period of disability and disability insurance benefits on October 5, 2020 and an application for disabled widow's benefits on March 23, 2021.  In both applications, Plaintiff alleged disability beginning on March 1, 2020.  Plaintiff's claims were denied after initial review on March 27, 2021 and denied again on reconsideration on June 17, 2021.  At Plaintiff's request, a hearing before ALJ Barbara Dunn was held on October 25, 2021.  Plaintiff appeared with counsel and testified at the hearing.  Vocational Expert ("VE") Steven

---

[1] The list of conditions considered by the Administrative Law Judge ("ALJ") was broader than those Plaintiff included in her application for benefits submitted on October 5, 2020.

Feinstein also appeared and testified at the hearing.  On December 14, 2021, ALJ Dunn denied Plaintiff's applications for benefits.  Plaintiff appealed, and on October 19, 2022, the Appeals Council denied a request for review, making the ALJ's decision the final decision of the Commissioner.

On December 20, 2022, Plaintiff commenced an action in this Court seeking review of the Commissioner's final decision.  On March 15, 2023, Magistrate Judge Valerie Figueredo signed a Stipulation and Order remanding the case for further administrative proceedings, and the Court entered a Judgement on that same date.  On May 20, 2023, the Appeals Council consolidated the October 5, 2020 application and a subsequent claim for disability benefits filed on November 2, 2022, finding that the subsequent claim was duplicative.  On October 3, 2023, a hearing before ALJ Mark Solomon was held.  Plaintiff appeared with counsel and testified at the hearing.  VE Helen J. Feldman and Medical Expert ("ME") Rujvi Dileep Kamat also appeared and testified at the hearing.  On November 24, 2023, ALJ Solomon denied Plaintiff's application for benefits once again.  Plaintiff appealed, and the Appeals Council denied a request for review, making the ALJ's decision the final decision of the Commissioner.

On February 14, 2024, Plaintiff filed this action in this Court seeking review of the Commissioner's final decision.  (ECF No. 1)  On September 5, 2024, Plaintiff filed the instant Motion for Judgment on the Pleadings and supporting papers.  (ECF No. 14)  In her motion, Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence because he did not properly explain his consideration of the supportability and/or consistency of virtually every medical opinion.  (*Id.* at pp. 17-21)  Plaintiff also points out that the ALJ's

decision contains two errors, including an incorrect statement that Plaintiff suffers from bipolar disorder and PTSD, rather than severe depressive disorder and anxiety disorder, and an incorrect statement that Plaintiff could perform a range of work at the sedentary exertional level, rather than the light exertional level.  (*Id.* at p. 21, n.3)

### 2.  *The Commissioner's Decision*

ALJ Solomon found that Plaintiff had engaged in SGA from January 2023 through the date of the decision, but that despite this, there had been a continuous 12-month period during which Plaintiff did not engage in SGA.  ALJ Solomon found that since the onset date of March 1, 2020, Plaintiff had the following severe impairments: diabetes mellitus, degenerative disc disease in the lumbar spine, left knee patellar spurring, obesity, allergic/seasonal rhinitis, hypertension, anxiety disorder, depressive disorder, and arthralgia in the lumbar spine, left ankle and left knee, and noted that these "impairments significantly limit [Plaintiff's] [] ability to perform basic work activities."  (A.R. 529)  However, ALJ Solomon determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 530)  ALJ Solomon gave specific consideration to Listings 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root(s)), 1.16 (Lumbar Spinal Stenosis Resulting in Compromise of the Cauda Equine), 1.18 (Abnormality of a Major Joint in any Extremity), 12.04 (Depressive, Bipolar and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorder), and Plaintiff's hypertension and diabetes in accordance with 4.00(H)(1) and 9.00(B)(5).  (*Id.*)  ALJ Solomon also specifically analyzed the "paragraph B" and "paragraph C"

criteria of the Listings related to the mental impairments.  (A.R. 531)  In making his

determination, ALJ Solomon found that Plaintiff did not suffer from at least two "marked"

limitations or one "extreme" limitation in the listed mental functional areas.  (A.R. 532)  Rather,

ALJ Solomon found that Plaintiff had a mild limitation in understanding, remembering, and

applying information; a mild limitation in interacting with others; a moderate limitation in

concentrating, persisting, and maintaining pace; and a moderate limitation in adapting or

managing herself.  (A.R. 531-32)

While acknowledging her mental impairments and symptoms, the ALJ nonetheless

concluded that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except [Plaintiff]
> can never climb ladders/ropes/scaffolds. [Plaintiff] can occasionally
> climb ramps and stairs. [Plaintiff] can occasionally balance, stoop,
> kneel, crouch and crawl. [Plaintiff] needs to avoid working at
> unprotected heights or with hazardous machinery. [Plaintiff] can
> frequently reach, handle and finger. [Plaintiff] must avoid
> concentrated exposure to respiratory irritants. [Plaintiff] can
> remember, understand and carry out simple instructions. [Plaintiff]
> needs to use judgment to make simple work-related decisions.
> [Plaintiff] can adapt to routine and occasional changes in the
> workplace. [Plaintiff] can perform a job not requiring a specific rate
> such as assembly line work or work that requires specific hourly
> quotas. [Plaintiff] can have routine (no limit) contact with supervisors,
> coworkers and the general public.

(A.R. 532-33)  This assessment was based on a full review of Plaintiff's medical opinions, prior

administrative medical findings, and all her symptoms.  (A.R. 533)  ALJ Solomon found that

Plaintiff's medically determinable impairments could reasonably be expected to cause the

alleged symptoms; however, he found Plaintiff's statements concerning the intensity,

persistence and limiting effects of these symptoms were not entirely consistent with the

medical evidence and other evidence in the record.  (A.R. 534)  At step five, ALJ Solomon found

that considering Plaintiff's age, education, work experience, and RFC, there are jobs "in

significant numbers in the national economy that the [Plaintiff] can perform" such as order

caller, marker, or mail clerk.  (A.R. 551)  Thus, ALJ Solomon found that Plaintiff had not been

disabled since March 1, 2020 through the date of the decision on November 24, 2023.  (A.R.

552)

## DISCUSSION

### 1.  *Standard of Review*

In its review, the Court has applied the frequently reiterated standards for entitlement

to Social Security disability benefits, review of a denial of such benefits, consideration of

motions for judgment on the pleadings, examination of the procedures employed, the

substantial evidence standard of review and deference accorded to ALJ decisions, evaluation of

vocational evidence, and the evaluation of mental impairments as amended by the new

regulations in 2017.  These standards, along with numerous authorities and citations, are

discussed at length in *Vellone v. Saul*, 2021 WL 319354, at *1 (S.D.N.Y. Jan. 29, 2021), *report

and recommendation adopted sub nom., Vellone on behalf of Vellone v. Saul,* 2021 WL 2801138

(S.D.N.Y. July 6, 2021), which discussion is hereby incorporated by reference.

### 2. Analysis

The sole legal question here is whether Plaintiff's RFC is supported by substantial evidence.[2]  Specifically, Plaintiff contends the ALJ failed to properly explain his consideration of the supportability and/or consistency of virtually every medical opinion.  After carefully reviewing the entire record, the Court finds that the ALJ's RFC analysis was supported by substantial evidence and is consistent with and supported by medical evidence in the record.

An ALJ is required to explain how they considered the supportability and consistency of a medical source's medical opinions or prior administrative medical findings in their decision. 20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are the most important factors for determining the persuasiveness of a medical source's medical opinions or prior administrative medical findings.  *Id.*

### A. Supportability

Plaintiff alleges that the ALJ failed to explain his consideration of the supportability of the medical opinions of Dr. Lidia Lidagoster, Nurse Practitioner ("NP") Spaulding, and Physician Assistant ("PA") Joseph Sanchez in arriving at his determination that these opinions were not

---

[2] While Plaintiff also points out that the ALJ's decision contains two errors (an incorrect statement that Plaintiff suffers from bipolar disorder and PTSD and an incorrect statement that Plaintiff could perform a range of work at the sedentary exertional level), the Court finds that these statements are typographical errors that do not warrant a remand.  In support of this finding, the Court notes that throughout the opinion, the ALJ repeatedly refers to and discusses in detail Plaintiff's severe depressive disorder and anxiety disorder, with the exception of the single reference to bipolar disorder and PTSD.  Further, as to the latter error, the Court notes that in the opinion, the ALJ states that Plaintiff is limited to a range of "light" work in his detailed discussion of the RFC determination, the section's heading, and with respect to the hypothetical propounded to the VE at the hearing, all of which support the ALJ's intention to find that Plaintiff is limited to a range of "light," not sedentary, work.  *See Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 425 (S.D.N.Y. 2016) (holding that ALJ's typographical error did not warrant remand where although there were inconsistencies in the ALJ's opinion, the opinion as a whole showed that the error was typographical and not substantive).

persuasive because the ALJ did not mention that the medical questionnaires of these individuals contained a question asking the them to "[i]dentify the positive clinical findings that demonstrate and/or support your diagnosis," and since they "provide[d] responses to that question, citing various clinical findings . . . [,] it is unclear whether the ALJ overlooked these responses or did not find these responses satisfactory."  (Plaintiff's Brief, ECF No. 15 at p. 18) (citing A.R. 427-33, 547-48, 1488-89) (quoting *Salerno v. Berryhill*, No. 13-CV-4600 (KMK) (LMS), 2017 WL 3106342, at *12 (S.D.N.Y. June 23, 2017), *adopted by*, 2017 WL 3098106 (July 20, 2017)).  This argument is unpersuasive.

First, although the ALJ did not specifically mention the medical questionnaires and the specific responses contained therein in his opinion, that does not mean that the ALJ overlooked the responses or did not find the responses satisfactory.  In fact, it is apparent from the decision that the ALJ relied on much of the same information contained in Dr. Lidagoster's, NP Spaulding's, and PA Sanchez's questionnaires in his explanation of supportability for each of these medical sources even though he did not specifically mention their questionnaires.  For example, the ALJ acknowledged similar clinical findings made by Dr. Lidagoster in her questionnaire in his opinion, including that Plaintiff "struggle[d] with anxiety and depression at times"; "had poor eye contact"; "had an intermittently anxious mood"; "was nervous at times"; had been "increasing[ly] stressed, tearful, overwhelmed, severely depressed and anxious due to her husband transitioning to end of life care and her daughter's recent suicide attempt"; "was not sleeping well"; "was eating poorly"; "was depressed and anxious with a withdrawn affect"; "was depressed, anxious dysphoric and anhedonic with a blunted effect"; was

"distractible"; had "somatic symptoms"; "had a panic attack"; "fe[lt] overwhelmed"; and

reported a "lack of concentration." (A.R. 427-33, 537-40, 547) Likewise, the ALJ acknowledged

similar clinical findings made by NP Spaulding in her questionnaire in his opinion, including that

Plaintiff had "panic disorder and chronic and recurrent major depression"; was "experiencing

more anxiety with panic attacks"; "ha[d] been feeling really stressed out"; "ha[d] been more

lethargic and [had] difficultly functioning at work"; had "a down and anxious mood"; "fe[lt]

overwhelmed and easily triggered to experience a panic attack"; "struggle[d] with anxiety and

symptoms of depression"; was "often sad and worried with intrusive thoughts that preoccupy

her mind and interfere with her day-to-day routine"; "struggled at work specially maintaining

consistency due to her labile mood and frequent panic attacks"; was "easily overwhelmed";

and had "panic symptoms with a racing heart, shortness of breath and difficulty focusing and

making practical decisions." (A.R. 541-43, 1488-89) And again, as to PA Sanchez, the ALJ

acknowledged similar clinical findings made by PA Sanchez in his questionnaire in his opinion,

including that Plaintiff "had a depressed and anxious mood with a withdrawn affect";

"experienced fatigue within 15 minutes of exposure to stress"; "had limited recent memory

recall"; "was not sleeping well due to trouble falling asleep and staying asleep"; "had poor eye

contact"; and "was eating poorly." (A.R. 521, 539, 547-48)

Further, the supportability analysis does not require the ALJ to name each individual

document he considered, but more generally, it requires "the ALJ [to] [] conduct an inquiry

confined to the medical source's own records that focuses on how well a medical source

supported and explained their opinion." *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022)

(internal quotations omitted).  The ALJ's supportability analysis should not be purely

"conclusory" or "offer no insight into how well [the medical sources] supported and explained

their opinion." *Id.* at 31.  "[T]he ALJ must discuss the crucial factors in any determination . . .

with sufficient specificity to enable the reviewing court to decide whether the determination is

supported by substantial evidence." *Id.* at 30 (quoting *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-

3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021)).  Here, the ALJ's supportability

analysis as to Dr. Lidagoster, NP Spaulding, and PA Sanchez was highly detailed and far from

being conclusory or offering no insight into how well these medical sources supported and

explained their opinions.

Beginning with Dr. Lidagoster, the ALJ found that her treatment records did not support

the limitations included in her opinion and, therefore, found her opinion to be not persuasive.

(A.R. 547)  In making this determination, the ALJ explained in detail, with specific references to

documents in the record, his consideration of at least 12 interactions that Dr. Lidagoster had

with Plaintiff and the observations and clinical findings made by Dr. Lidagoster in each of those

instances occurring in March 2020, April 2020, June 2020, July 2020, October 2020, November

2020, December 2020, March 2021, April 2021, May 2021, June 2021, and July 2021.  (A.R. 537-

41, 547)  The treatment records referenced by the ALJ for these instances included notable

findings, including that while Plaintiff was experiencing symptoms of depression and anxiety,

Plaintiff was doing well overall and was alert, oriented, attentive, had good judgment, memory

and impulse control, and could make decisions regarding all of her needs and affairs, among

others.  (A.R. 397-99, 403, 449, 452, 457, 537-38, 540, 547)  The ALJ also specifically described

10

the key factors that went into his determination, including that Dr. Lidagoster's treatment records showed that Plaintiff "stopped work due to [the COVID-19] [] pandemic shutdown"; that Plaintiff's "mental status examinations prior to the alleged onset date and thereafter were substantially within normal limit until exacerbation in the fall of 2020 with [her] daughter's suicide attempt";  that "there are no documented limits in concentration, despite allegations as to lack of concentration as [Plaintiff] was noted to be attentive at all follow up examinations"; that Plaintiff "was eating well but had some difficulty sleeping but then noted her sleep was improved on medications"; that Plaintiff's "symptoms of depression increased after her [h]usband's death in March 2021"; that Plaintiff was "able to make decisions for all her affairs and needs";  that Plaintiff "had alleged occasional panic attacks but the frequency and duration were not documented"; that "there is no significant decompensation"; that Plaintiff "did not describe any limits in ability to perform activities of daily living"; that Plaintiff "was able to take care of family despite extraordinary stressors"; that there are "no[] document[ed] [] limits in [Plaintiff's] ability to interact with supervisors or coworkers, or limits in traveling on public transportation"; and that Plaintiff "has [] been working at substantial gainful activity levels." (A.R. 547)

For NP Spaulding, the ALJ similarly found that her treatment records did not support the limitations included in her opinion and, therefore, found her opinion to be not persuasive. (A.R. 549)  In making this determination, the ALJ again explained in detail, with specific references to documents in the record, his consideration of at least 13 interactions that NP Spaulding had with Plaintiff and the observations and clinical findings made by NP Spaulding in

each of those instances occurring in March 2022, April 2022, June 2022, August 2022, October

2022, December 2022, January 2023, March 2023, June 2023, July 2023, August 2023,

September 2023, and October 2023.  (A.R. 541-43, 549)  The treatment records referenced by

the ALJ for these instances included notable findings, including that although Plaintiff reported

depressive symptoms, Plaintiff's mental status evaluations remained within normal limits and

she was alert and oriented, had good eye contact, organized thoughts, intact memory, and

decent insight and judgment, and was doing better with a medication adjustment, among

others.  (A.R. 541-43, 999, 1001, 1012, 1014, 1016, 1018, 1020, 1023-24, 1026, 1490, 1492,

1495, 1498, 1501, 1503, 1506, 1509, 1512, 1515, 1518, 1521, 1524, 1527, 1530, 1533, 1536,

1538, 1540)  The ALJ also specifically described the key factors that went into his

determination, including that NP Spaulding's treatment records showed that "the majority of

[Plaintiff's] mental status examinations were within normal limits"; that there were "no

[documented] limits in cognition, memory and concentration"; and that there was "not[hing]

documented that she is unable to work consistently as she is working at SGA."  (A.R. 549)  The

ALJ also noted that "[t]he extensive treatment records, particularly [from] [NP] Spaulding,

document no memory or concentration limits."  (A.R. 534)

Finally, for PA Sanchez, the ALJ likewise found that his treatment records did not

support the limitations included in his opinion and, therefore, found his opinion to be not

persuasive.  (A.R. 549)  In making this determination, the ALJ again explained in detail, with

specific references to documents in the record, his consideration of the single treatment report

completed by PA Sanchez regarding his interaction with Plaintiff and the observations and

clinical findings made by PA Sanchez in that instance in November 2020. (A.R. 539) The

treatment records referenced by the ALJ for this instance included notable findings, including

that Plaintiff was experiencing a recent stressor from her daughter's suicide attempt, but

Plaintiff was still oriented and cooperative and had good impulse control and good memory,

among others. (A.R. 391-92, 521) The ALJ also specifically described the key factors that went

into his determination, including that PA Sanchez's treatment records showed that "[his]

opinion was given after a late November 2020 follow up psychiatric evaluation which noted

recent exacerbation of symptoms due to stressors including daughters' suicide attempt"; that

"[a]ll of [Plaintiff's] examinations beginning in January 2020 through October 2020 note intact

memory and concentration, no psychomotor agitation or retardations, sleeping well and eating

well"; that Plaintiff "was doing well for the most part and [] [was] able to make decisions

regarding all of her affairs"; that "there is no description of any limits in activities of daily

living"; that "there was no mention that [Plaintiff] had been working well after the alleged

onset date including the present [or] that she stopped working in 2020 due to the COVID-19

pandemic"; there were "no significant changes in her ability to function"; and there was "no

mention of fatigue or episodes lasting hours." (A.R. 547-48) Notably, in his treatment report,

PA Sanchez stated that the expected duration of Plaintiff's condition was "6 month" (A.R. 521),

which is less than the time requirement for a disability of "not less than 12 months." *See* 20

C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."). *Salerno v Berryhill*, 13-cv-4600, 2017 WL 3106342 (S.D.N.Y. June 23, 2017), relied on by Plaintiff, is distinguishable because here, the ALJ did not discount observations that substantiated conclusions reached in the questionnaire. To the contrary, as discussed above, the ALJ relied on much of the same information contained in Dr. Lidagoster's, NP Spaulding's, and PA Sanchez's questionnaires in his detailed explanation of supportability for each of these medical sources.

Therefore, given the ALJ's detailed and thorough explanation as to how well Dr. Lidagoster, NP Spaulding, and PA Sanchez supported their opinions based on their treatment records, the Court finds that the ALJ properly assessed the supportability of Dr. Lidagoster's, NP Spaulding's, and PA Sanchez's medical opinions.

### B. <u>Consistency</u>

Plaintiff alleges that the ALJ failed to consider how consistent the treating and examining source medical opinions were with one another, specifically those of Dr. Lidagoster, NP Spaulding, PA Sanchez and Dr. Michelle Sanders. (ECF No. 15 at p. 19) Plaintiff further alleges that the ALJ erred in apparently basing his RFC finding almost exclusively on the opinions of non-examining agency medical reviewers Dr. S. Juriga, Dr. D. Brown, Dr. S. Shapiro, Dr. H. Rozelman, and Dr. Kamat because "Drs. Juriga and Brown did not have access to any treatment records after June 2021 and Drs. Shapiro and Rozelman did not have access to treatment records after June 2023" and "Drs. Juriga, Brown, Shapiro, Rozelman and Kamat never personally examined [Plaintiff]." (*Id.* at pp. 20-21) None of these arguments are meritorious.

With respect to the ALJ's consideration of the consistency of Dr. Lidagoster's, NP Spaulding's, PA Sanchez's and Dr. Sanders's medical opinions, as discussed above, the ALJ discusses in his opinion how although these medical sources made findings that Plaintiff experienced symptoms of depression and anxiety, their treatment records were consistent insofar as they generally showed benign findings and normal exams.  (A.R. 534, 537-43, 546-49).  In his opinion, the ALJ also made some pointed assessments about the consistency of the findings of these medical sources.  (e.g., "Dr. Sanders' March 2021 mental status examination noted no more than mild impairments on examination, which is consistent with the treatment records from Nurse Spaulding.")  Further, "nothing in the regulations . . . specifically requires that an ALJ discuss this sort of 'internal' consistency; [r]ather, the regulations simply require that an ALJ assess each medical opinion's consistency with the other evidence in the record," as the ALJ has done here. *Young v. Kijakazi*, No. 20-cv-03604-SDA, 2021 WL 4148733, at *10 (S.D.N.Y. Sept. 13, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)) (footnote with additional citations omitted). *Green v. Acting Comm'r of Soc. Sec.*, 2023 WL 2872896 (S.D.N.Y. Feb. 15, 2023) and *Williams v. Saul*, 2020 WL 6385821 (S.D.N.Y. Oct. 30, 2020), relied on by Plaintiff, are distinguishable because in those cases, the ALJ focused on only limited areas of evidence in his consistency analysis, whereas here, the ALJ considered the entire record and provided a detailed and thorough analysis of the consistency of the medical opinions.  (A.R. 528)  ("After careful consideration of the entire record, I make the following findings . . .").

With respect to Plaintiff's allegations that the ALJ's opinion is erroneous because Drs. Juriga and Brown did not have access to treatment records after June 2021 and Drs. Shapiro

and Rozelman did not have access to treatment records after June 2023, nothing in the

regulations requires that the medical sources have access to the entire scope of treatment

records in order for their opinions to constitute substantial evidence.  *See Camille v. Colvin*, 652

F. App'x 25, 28 n.4 (2d Cir. 2016) (finding that a medical opinion may constitute substantial

evidence even if it does not encompass the entire treatment record).  Also, given that the ALJ

found Plaintiff to be engaged in SGA from January 2023 through the date of his decision, the

fact that Drs. Shapiro and Rozelman did not have access to treatment records after June 2023 is

irrelevant to the findings in their medical opinions, since those records involve a timeframe

when Plaintiff had SGA and thus does not qualify for disability benefits.  Moreover, the ALJ's

opinion considers and is supported by treatment records that capture the entire period of

potential disability.  The cases relied on by Plaintiff for the proposition that non-examining

doctors' opinions cannot constitute substantial evidence are distinguishable.  *See Avila v.

Comm'r of the SSA*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021) (unlike the present case where

the ALJ considered the medical opinions of several non-treating physicians, the ALJ in *Avila*

primarily relied on the medical opinion of a single non-treating physician in determining that

there was substantial evidence to support the finding that claimant was not disabled); *Vargas v.

Sullivan*, 898 F.2d 293 (2d Cir. 1990) (decided when treating physician rule applied; unlike the

present case where the ALJ considered the medical opinions of several non-treating physicians,

the ALJ in *Vargas* primarily relied on the medical opinion of a single non-treating physician

whose "job as a medical adviser was to explain complex medical problems in terms

16

understandable to lay examiners"); *Whitney v. Schweiker*, 695 F.2d 784 (7th Cir. 1992) (decided

when treating physician rule applied and not binding on this Court).

Finally, with respect to Plaintiff's claims that the ALJ's opinion is also erroneous because

Drs. Juriga, Brown, Shapiro, Rozelman and Kamat never personally examined Plaintiff, it is not

required that medical sources personally examine a claimant in order for their medical opinions

to constitute substantial evidence.  *See, e.g.*, *Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir.

2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise

supported by the record.") (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983));

*Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016) (finding that the

ALJ correctly weighed the opinion of a medical expert even though he did not treat the plaintiff

because his opinion was consistent with the medical evidence in the record); *see also Angela

H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 9 (W.D.N.Y. 2022) (the ALJ afforded greater

weight to the medical opinion of a non-examining physician than that of an examining

physician and found that it constituted substantial evidence because it was better supported by

the record; "Although an examining source is generally afforded more weight than a non-

examining source, an ALJ is allowed to afford a non-examining source more weight than an

examining one . . . when it is better supported by the record.") (internal quotations and

citations omitted).  In this case, the opinions on which the ALJ relied are consistent with and

supported by the medical records.

Ultimately, the evidence the ALJ considered is sufficient for "a reasonable mind to

accept the conclusion[] reached by the Commissioner," *Silvers v. Colvin,* 67 F. Supp. 3d 570, 574

(W.D.N.Y. 2014) – that is, that Plaintiff's severe impairments (i.e., diabetes mellitus, degenerative disc disease in the lumbar spine, left knee patellar spurring, obesity, allergic/seasonal rhinitis, hypertension, anxiety disorder, depressive disorder and arthralgia in the lumbar spine, left ankle and left knee) did not result in any limitation that must be accounted for in Plaintiff's RFC apart from limiting the Plaintiff to performing light work, with the exception that Plaintiff can never climb ladders/ropes/scaffolds, can occasionally climb ramps and stairs, can occasionally balance, stoop, kneel, crouch and crawl, needs to avoid working at unprotected heights or with hazardous machinery, can frequently reach, handle and finger, must avoid concentrated exposure to respiratory irritants; claimant can remember, understand and carry out simple instructions; needs to use judgment to make simple work-related decisions, can adapt to routine and occasional changes in the workplace, can perform a job not requiring a specific rate such as assembly line work or work that requires specific hourly quotas, and can have routine (no limit) contact with supervisors, coworkers and the general public. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) ("Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence.").  Throughout his opinion, the ALJ thoroughly assesses and explains the supportability and consistency of the medical sources and makes findings in a manner consistent with the record.  (A.R. 522-52)  Importantly, the ALJ acknowledges Plaintiff's symptoms of depression and anxiety as documented in the treatment records and adjusts the RFC to include relevant limitations, such as remembering, understanding, and carrying out simple instructions; performing a job not requiring a specific rate (e.g., assembly line work or

18

work that requires specific hourly quotas); and having routine (no limit) contact with supervisors, coworkers and the general public.  The ALJ also acknowledges Plaintiff's physical constraints and adjusts the RFC to include additional relevant limitations, such as never climbing ladders/ropes/scaffolds; occasionally climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching and crawling; avoiding work at unprotected heights or with hazardous machinery; and avoiding concentrated exposure to respiratory irritants.

The substantial evidence standard is highly deferential and can be rejected only if a reasonable factfinder would have to conclude otherwise.  Said another way, even if the Court might reach a different result, if the ALJ's opinion is supported by substantial evidence then it should be affirmed.  *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012).  Here, I find that the ALJ's decision was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is DENIED.

Dated: March 6, 2025
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge